# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Monue F.G., | |
| Petitioner, | Case No. 18-cv-1935 (NEB/ECW) |
| v. | **REPORT & RECOMMENDATION** |
| ICE, | |
| Respondent. | |

This matter is before the Court on Monue F.G.'s ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. No. 1) ("Petition") and Petitioner's Motions for Immediate Release (Dkt. Nos. 13, 14). The Petition asks the Court to release him from immigration detention or to order a bond hearing to determine if he is a danger to the public or a flight risk. In his Motions for Immediate Release, Petitioner provided evidence to the Court of his marriage to a U.S. citizen and of a modification of one of Petitioner's criminal sentences, and he asks the Court to immediately and unconditionally release him from custody. (*See* Dkt. Nos. 13, 14.) The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that the Motions for Immediate Release be denied and the Petition be denied as moot.

## I.     BACKGROUND

Petitioner was born in Liberia on November 27, 1987 and remains a citizen of Liberia. (Dkt. No. 6-1, Ex A at 6.) Petitioner entered the United States on an F-22 visa (child of alien residents under 21) in Chicago, IL on June 1, 2010. (*Id.*) Petitioner's father entered the United States in 2003 along with Petitioner's three half-brothers. (*Id.* at 84.) Petitioner has two half-sisters who were born in the United States. (*Id.*)

Over the last few years, Petitioner has had several relevant encounters with the criminal justice system. On June 29, 2015, an Iowa state court issued a Temporary Protective Order against Petitioner after allegations of domestic abuse were filed against Petitioner. (*Id.* at 49-58.) By order dated July 17, 2015, Petitioner admitted violation of the Temporary Protective Order, but reached an agreement with the prosecutor to amend the charge to a general contempt charge. (*Id.* at 43-44.) Petitioner was ordered to serve seven days for the violation. (*Id.*)

In January 2016, Petitioner was arrested and charged with violation of Theft in the Third Degree in Poweshiek County, IA. (*Id.* at 24-26.) The criminal complaint alleged that Petitioner deposited three checks with insufficient funds with a community credit union and received $841.00 in cash. (*Id.*) Petitioner pled guilty to the lesser-included offense of Theft in the Fourth Degree. (*Id.* at 17-19.) On January 5, 2017, the court entered judgment against Petitioner and ordered him to serve one year in jail. (*Id.* at 12-14.) The judgment was later set aside and amended. (*Id.* at 59-61.)

On February 14, 2017, Petitioner was found guilty of another theft violation— Theft in the Fifth Degree—in Iowa state court. (*Id.* at 29-32.) The court found that

Petitioner had stolen four books recently purchased from a school book store, returned them to the book store, and kept the $102.00 he received. (*Id.*) Petitioner was ordered to pay a fine for the violation. (*Id.*)

On April 10, 2018, the Department of Homeland Security ("DHS") took Petitioner into custody and charged him with removal based on three sections of the Immigration and Nationality Act ("INA"). (*Id.* at 2-4.) First, under INA § 237(a)(2)(A)(ii), DHS alleged that Petitioner had been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. (*Id.*) Second, under INA § 237(a)(2)(E)(ii), DHS alleged that Petitioner had been enjoined under a protection order and been determined to have engaged in conduct in violation of that order. (*Id.*) Third, under INA § 237(a)(2)(A)(iii), DHS alleged that Petitioner was convicted of an offense with a sentence of one year or more. (*Id.*)

Immigration Judge ("IJ") Sarah B. Mazzie took pleadings on the removal matter on May 9, 2018. (Dkt. No. 6-1, Ex. A at 71.) Petitioner admitted the predicate allegations for the first and second charges, but submitted to the IJ the order setting aside and amending the conviction of the Theft in the Fourth Degree. (*Id.*) The IJ sustained the first and second charges, but did not sustain the third because the order setting aside and amending judgment indicates that Petitioner was not sentenced to a term of imprisonment for one year. (*Id.* at 71-72.)

The IJ held a hearing on May 23, 2018. (*Id.* at 72.) At the hearing, the IJ ruled that Petitioner is not statutorily eligible for cancellation of removal because she determined that the two theft convictions constitute crimes involving moral turpitude and

they were both committed within seven years of Petitioner's admission to the United States. (*Id.*) The IJ determined that Petitioner's residence clock was "cut off after the commission of the second [theft] offense." (*Id.*) Accordingly, the IJ determined that the only relief from removal was to apply for asylum. (*Id.*)

The IJ held a hearing regarding Petitioner's asylum request on June 28, 2018. (*Id.* at 71-92.) The IJ determined that Petitioner is removable under the first and second charges, specifically finding that both of his theft convictions involved moral turpitude. (*Id.* at 76-83.) The IJ then determined that Petitioner had not met his burden of establishing eligibility for asylum. (*Id.* at 83-89.) Accordingly, the IJ ordered Petitioner removed from the United States to Liberia. (*Id.* at 92.) Petitioner timely appealed to the Board of Immigration Appeals ("BIA") and briefing was due September 19, 2018. (*Id.* at 94.)

Petitioner has been detained at Freeborn County Detention Center in Albert Lea, Minnesota since April 10, 2018. (Dkt. No. 1-1, Ex. A at 7.) Petitioner filed a *pro se* writ of habeas corpus on July 11, 2018. (Dkt. No. 1.) Petitioner makes numerous challenges in his Petition, including that he was not properly served a notice to appear (Dkt. No. 10 at 2), that his theft convictions do not constitute crimes involving moral turpitude (*id.* at 3), that he never was given a bond hearing to determine if he is a flight risk or a threat to public safety (*id.* at 5), that he is not subject to mandatory detention because he has a substantial argument against removability (*id.* at 6), and that the IJ made errors regarding Petitioner's removability (*id.* at 22-28).

4

Petitioner was married to a U.S. citizen on October 26, 2018, who filed a Form I-130 on Petitioner's behalf. (Dkt. No. 16; Dkt. No. 16-2 at 2.) In November, Petitioner filed motions for immediate release from custody based on his marriage to a citizen and his amended judgment in the fourth-degree theft case. (Dkt. Nos. 13, 14.)

On December 6, 2018, the BIA dismissed Petitioner's appeal (Dkt. No. 20-1 at 1-8), thus rendering his removal order final under 8 C.F.R. § 1241.1(a). Because Petitioner is now subject to a final removal order, his detention is mandated by 8 U.S.C. § 1231(a)(2). Petitioner filed a Motion to Reopen/Reconsider before the BIA (Dkt. No. 20-1 at 9-27), which was rejected for failure to pay the required fee (*id.* at 33-34). On January 31, 2019, Petitioner refiled the Motion to Reopen/Reconsider with a fee waiver. (Dkt. No. 20-1 at 41.) On the same date, Petitioner filed a Motion for "Emergency Stay of Removal" with the BIA (Dkt. No. 20-1 at 35-40), and on March 8, 2019, Petitioner appears to have filed a second Motion for "Emergency Stay of Removal" with the BIA (Dkt. No. 23 at 4-9). Neither Petitioner nor Respondent have provided the Court with any documents indicating the disposition or status of Petitioner's Motion to Reopen/Reconsider or Motions for "Emergency Stay of Removal," although Petitioner claims the BIA granted him a stay. (Dkt. No. 22 at 4.) Petitioner also filed an appeal of the BIA decision to the Eighth Circuit, which remains pending, but did not seek a stay of his final order of removal from the Eighth Circuit. No. 18-3754, Dkt. No. 1 (8th Cir. Dec. 28, 2018).

## II.  LEGAL STANDARD

### A.  Writ of Habeas Corpus

"Writs of habeas corpus may be granted by the Supreme Court . . . the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). "The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3). Congress has imposed statutory limits on habeas corpus petitions in immigration proceedings. For example, a petition for review from an order of removal cannot be brought under the habeas statute and must go directly to the circuit courts of appeals. *See* 8 U.S.C. § 1252(a)(5). While § 2241 confers jurisdiction upon federal courts to hear habeas challenges to the lawfulness of immigration-related detentions, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), judicial review of detention decisions made under 8 U.S.C. § 1226 is limited by the following provision:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

*Id.* § 1226(e); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003). However, the Supreme Court has determined that § 1226(e) does not bar a constitutional challenge to the length of pre-removal detention. *See Demore*, 538 U.S. at 517; *Zadvydas*, 533 U.S. at 688; *see also Davies v. Tritten*, No. 17-cv-3710 (SRN/SER), 2017 WL 4277145, at *2 (D. Minn. Sept. 25, 2017).

6

B.     **Detention of Aliens under 8 U.S.C. § 1226(c)**

INS initially detained Petitioner pursuant to 8 U.S.C. § 1226(c) because he was detained and charged with removability based on convictions considered to be offenses involving moral turpitude.  *See* 8 U.S.C. § 1226(c)(1)(B).  Under Section 1226(c)(2):

> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

8 U.S.C. § 1226(c)(2).

Section "1226(c) *mandates* detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018) (emphasis added).

Regardless of the language of § 1226(c) requiring mandatory detention of aliens, the Fifth Amendment's Due Process Clause forbids the Government from "depriv[ing]" any "person . . . of . . . liberty . . . without due process of law."  U.S. Const. amend. V.  "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993).  The U.S. Supreme Court has emphasized that "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects."  *Zadvydas*, 533 U.S. at 690.  Indeed, the U.S. Supreme Court has affirmed that "[a] statute

permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.*; *see generally*, *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (holding that, in order to justify continued confinement of a mentally ill person after a not-guilty-by-reason-of-insanity verdict for the purposes of due process, a state bears the burden of showing "by clear and convincing evidence that the individual is mentally ill and dangerous.") (internal quotation marks omitted).

### C.     Detention of Aliens Under 8 U.S.C. § 1231(a)

In *Zadvydas*, the Supreme Court examined a different statute, 8 U.S.C. § 1231(a)(6), which provides that certain aliens who have been ordered to be removed may be detained "beyond the removal period and, if released, shall be subject to [certain] terms of supervision."  After the BIA dismissed Petitioner's appeal, Section 1231 became the applicable statute because the IJ's removal order was then final.  In *Zadvydas*, the Court rejected a literal reading of 8 U.S.C. § 1231(a)(6), expressing concern that detention under § 1231(a)(6), which often occurs when the DHS has difficulty finding placement for an alien abroad, could become indefinite.  533 U.S. at 682.  The Court noted "the serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any such protection is obvious." *Id.* at 692.  The Court concluded that in order to avoid this possible constitutional problem, detention pursuant to § 1231(a)(6) is presumed reasonable for six months. *Id.* at 701.  Continued detention after six months is unlawful if (1) an alien shows that there is no significant likelihood of removal in the reasonably

foreseeable future and (2) the government is unable to rebut this showing with evidence. *Id.* at 701.

## III.  DISCUSSION

### A.  Whether Petitioner Is Currently Detained Under § 1226 or § 1231

At the time Petitioner filed his Petition and his Motions for Immediate Release, he was subject to pre-removal detention pursuant to 8 U.S.C. 1226(c).  Respondent argues that when the BIA dismissed Petitioner's appeal, his removal order became final and his status shifted to detention under 8 U.S.C. § 1231(a).

According to § 1231(a), "[t]he removal period begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).  Here, Petitioner's removal period began when the removal became administratively final—i.e. when the BIA dismissed Petitioner's appeal on December 6, 2018.  *See* 8 C.F.R. § 1241.1 ("An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final . . . [u]pon dismissal of an appeal by the Board of Immigration Appeals."). Respondent contends that Petitioner's challenge to his § 1226(c) detention is now moot because he is being held pursuant to § 1231, rather than § 1226.  (Dkt. No. 19 at 8.)

9

Petitioner, however, argues that he is being detained pursuant to § 1226—not § 1231—because he sought a stay from the BIA and, according to Petitioner, the stay was granted. (Dkt. No. 22 at 3-4.) Petitioner contends this shifts his detention from § 1231 to § 1226. (*Id.* at 4.) Petitioner did not submit any documentation supporting his assertion that the BIA has granted his motions for stay, and the Court has not been provided with any additional information regarding Petitioner's Motions to Reopen/Reconsider or for "Emergency Stay of Removal." Regardless of the status of Petitioner's motions before the BIA, as explained below, the Court finds that Petitioner is being detained under § 1231 rather than § 1226.

Petitioner relies on *Tindi v. Sec'y, Dep't of Homeland Sec.*, No. 17-cv-3663 (DSD/DTS), 2018 WL 704314 (D. Minn. Feb. 5, 2019), to support his contention that his stay motions (or the alleged grant of the stay by the BIA) shifts his detention back to § 1226. In *Tindi*, however, the petitioner successfully sought a stay from the Eighth Circuit Court of Appeals—not the BIA. 2018 WL 704314, at *1 ("On May 16, 2017, Tindi filed a petition for review of his final removal order with the Eighth Circuit Court of Appeals. The Eighth Circuit stayed Tindi's removal pending its decision on the petition for review . . . ."). Section 1231(a)(1)(B)(ii) provides as follows with regard to when the removal period begins: "If the removal order is judicially reviewed and **if a court orders a stay of the removal of the alien**, the date of the court's final order." 8 U.S.C. § 1231(a)(1)(B)(ii) (emphasis added). Thus, the Eighth Circuit's stay of Tindi's removal shifted Tindi's detention from § 1231 to § 1226. *See Tindi*, 2018 WL 704314, at *2 ("The magistrate judge concluded that Tindi is in pre-removal detention under §

10

1226(a). The government argues that Tindi is being held in post-removal detention under § 1231. The court agrees with the magistrate judge that Tindi is in pre-removal detention. Although Tindi was subject to a final order of removal, **that order was stayed by the Eighth Circuit**. Several circuits have concluded that **when a court stays a final order of removal**, the alien is no longer subject to a final order of removal and the removal period has not yet begun.") (emphases added). In contrast to the petitioner in *Tindi*, however, Petitioner in this case sought a stay from the BIA—not from a court. Nothing in the language of 8 U.S.C. § 1231 (or 8 C.F.R. § 1241.1) suggests that a final order of removal becomes non-final if a stay is sought from (or granted by) the BIA. *See Shixin Lu v. Adducci*, 15-CV-11448, 2015 WL 3948920, at *3 (E.D. Mich. June 29, 2015) ("The BIA's decision to voluntarily stay Petitioner's removal is not the 'stay of the removal' contemplated under § 1231(a)(1)(B)(ii) for two reasons: first, the BIA's review is an administrative review, rather than a 'judicial[ ] review'; second, whatever decision the BIA makes on Petitioner's motion to reopen her case, it is not a 'court's final order.' Were the BIA to decide not to reopen Petitioner's case, her recourse would be a petition to the Court of Appeals to review that decision."); *see also Fuenmayor v. U.S. Attorney Gen.*, 213 F. App'x 822, 823 (11th Cir. 2007) (when addressing time limits for judicial review under § 1252(b)(1), "Filing [a motion for reconsideration before the BIA] has no [e]ffect on the finality of the BIA's order and 'does not toll the time to petition for review'") (quoting *Stone v. Immigration & Naturalization Serv.*, 514 U.S. 386, 394-95 (1995)). Thus, even if the BIA has granted the stay, it would not alter the finality of the removal order, and does not shift Petitioner's detention from § 1231 to § 1226. The

11

Court concludes that Petitioner has been detained under § 1231 since the BIA dismissed his appeal on December 6, 2018. Since Petitioner is being detained under § 1231, and no longer under § 1226(c), the Court can no longer grant relief under § 1226(c), and his claim based on his pre-removal detention is moot. *See Alier D. v. Sec. of Dept. of Homeland Sec.*, 18-cv-1645 (NEB/HB), 2018 WL 5847244, at *2 (D. Minn. Nov. 8, 2018) ("The shift of the government's authority to detain the petitioner from § 1226 to § 1231 renders moot his claim based on pre-removal detention."); *see also Patrick H. v. Secretary of Dep't of Homeland Security*, No. 18-cv-1841 (NEB/HB), Dkt. No. 27 at 5 (D. Minn. Nov. 6, 2018) (collecting cases), *R&R adopted* Dkt. No. 2 (D. Minn. Dec. 26. 2018).

**B.     Constitutionality of Petitioner's Detention Under Section 1231**

The remaining issue is whether Petitioner's detention under § 1231 is constitutional. Section 1231(a)(1)(A) provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." In this case, Petitioner has not been removed within the 90-day period, which ended on March 6, 2019.[1] However, in *Zadvydas*, the Supreme Court held that detention pursuant to § 1231(a)(6) is presumed reasonable for six months. 533 U.S. at 701. Continued detention after six months is unlawful if (1) an alien shows that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the

---

[1]     Based on the Court's review of the documents filed in this case, it appears that Petitioner was scheduled to have a custody review hearing on March 6, 2019. (*See* Dkt. No. 23 at 24.) The outcome of that hearing (if any) has not been provided to the Court.

government is unable to rebut this showing with evidence. *Id.* Petitioner is still well within the six-month timeframe contemplated by *Zadvydas*, which lasts until June 6, 2019, so his detention is considered lawful. Moreover, Petitioner has not shown that there is no significant likelihood of removal in the reasonably foreseeable future. For at least these reasons, Petitioner's custody pursuant to § 1231 is permissible. Thus, to the extent Petitioner requests relief under § 1231, the Court recommends it be denied.

### C.     Petitioner's Motions for Immediate Release

Petitioner also moved to grant his writ of habeas corpus based on changed circumstances—namely that Petitioner's sentence for his fourth-degree theft charge was set aside and amended and that Petitioner married a U.S. citizen on October 26, 2018. (Dkt. No. 13 at 2; Dkt. No. 14 at 2.) Regarding the change in Petitioner's fourth-degree theft sentence, Petitioner argues that he is no longer subject to § 1226 custody since he has only one conviction. (*See* Dkt. No. 13 at 2.) Because this argument relates only to his § 1226 detention, this was mooted by change in status to § 1231, and the Court recommends the motions be denied as moot. Regarding Petitioner's marriage to a U.S. citizen, it unclear exactly why Petitioner contends the marriage relates to his custody, but to the extent Petitioner believes that his immigration status should be adjusted because of the marriage, the Court lacks jurisdiction to review such a determination. *See Mhanna v. U.S. Dept. of Homeland Sec. Citizenship and Immig. Services*, 10-cv-292 JRT/LIB, 2010 WL 5141803, at *16 (D. Minn. Dec. 13, 2010) (granting "defendants' motion to dismiss for lack of subject matter jurisdiction to the extent that [Petitioner] asks the Court to grant the application for adjustment or to review the USCIS' discretionary decision to deny the

application for adjustment"). Accordingly, the Court recommends Petitioner's Motions for Immediate Release (Dkt. Nos. 13, 14) be denied.

## IV. RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1. Petitioner Monue F.G.'s Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. No. 1) be **DENIED AS MOOT**.

2. Petitioner's Motion for Writ of Habeas Corpus for Immediate Release from Custody (Dkt. Nos. 13, 14) be **DENIED**.

3. This Petition be **DISMISSED WITHOUT PREJUDICE**.


DATED: April 12, 2019                *s/Elizabeth Cowan Wright*
                                     ELIZABETH COWAN WRIGHT
                                     United States Magistrate Judge


## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).